IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| **DISABILIY RIGHTS TENNESSEE,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | NO. 1:23-cv-00086 |
| ) | |
| **MIDDLE TENNESSEE DETENTION** ) | **JUDGE CAMPBELL** |
| **CENTER, LLC, et al.,** ) | **MAGISTRATE JUDGE HOLMES** |
| ) | |
| Defendants. | |

## MEMORANDUM

Pending before the Court is Defendants Middle Tennessee Detention Center, LLC ("MTJDC"), Jason Crews, Hollis Residential Treatment Center, and Wayne Halfway House, Inc.'s ("Defendants") second motion to dismiss (Doc. No. 55), which is fully briefed and ripe for review. (*See* Doc. Nos. 60, 64). For the reasons explained below, Defendants' motion will be **GRANTED** in part and **DENIED** in part.

### I. FACTUAL BACKGROUND

Plaintiff Disability Rights Tennessee ("DRT") is a non-profit organization designated by the State of Tennessee as "the organization with responsibility to advocate for and protect the rights of individuals with disabilities and to investigate abuse and neglect of individuals with disabilities" under the Protection and Advocacy for Individuals with Mental Illness Act ("PAIMI Act"), 42 U.S.C. §§ 10801-10827, the Developmental Disabilities Assistance and Bill of Rights Act ("DD Act"), 42 U.S.C. §§ 15041-15045, and the Protection and Advocacy of Individual Rights under the Vocational Rehabilitation Act ("PAIR"), 29 U.S.C.A. § 794e, (collectively referred to as "the P&A Acts"), which "includes the authority to access the records of such individuals in certain circumstances." (Doc. No. 45 ¶¶ 2, 14).

Defendant MTJDC is a youth detention facility located in Maury County and operated by Middle Tennessee Detention Center, LLC. (*Id.* ¶ 15). Defendant Wayne Halfway House Inc. operates MTJDC and Defendant Hollis Residential Treatment Center, a residential child-care agency located within Maury County. (*Id.* ¶¶ 17-18). Defendant Jason Crews is the Executive Director of Wayne Halfway House Inc. and MTJDC. (*Id.* ¶ 16).

Plaintiff monitors and investigates detention and residential treatment facilities for youths with disabilities. (*Id.* ¶ 26). During monitoring visits, Plaintiff observes physical conditions, gathers information from staff, and speaks privately with residents so they have an opportunity to confidentially discuss concerns about their experiences at the facility. (*Id.*). In addition to monitoring visits, Plaintiff relies on complaints from the public, family members, and individuals to open investigations and access records. (*Id.* ¶ 29).

Through information disclosed during a facility monitoring visit, Plaintiff may determine that there is probable cause that abuse or neglect has occurred and open an investigation. (*Id.* ¶ 31). Once an investigation into alleged abuse or neglect against a youth has been opened, Plaintiff has the right to access the records of the youth. (*Id.* ¶ 33). Consent from the youth's parent or guardian is required for Plaintiff to request records for an individual. (*Id.* ¶ 34).

Beginning in the spring of 2023, Plaintiff alleges that it received complaints regarding various youths housed at MTJDC and Hollis Residential Treatment Center, conducted monitoring visits of the facilities, and determined that probable cause of abuse or neglect existed. As a result, Plaintiff opened investigations into these youths and requested their records from the facilities. The records requested by Plaintiff that are at issue include parental contact information, video footage of pepper spray incidents, incident reports, education records, behavior reduction sheets, medical records, and surveillance video footage. (*Id.* ¶¶ 52, 64, 72, 82, 96, 108, 113). For each

youth individual named in the Second Amended Complaint, Plaintiff alleges that (1) the facilities failed to provide any of the requested records (*Id.* ¶¶ 43-45, 47, 49-52, 125, 127, 137, 162); or (2) that the records provided were incomplete (*Id.* ¶¶ 53-60, 65, 67, 72, 73, 75, 77-78, 79-82, 83-84, 87-88, 89-96, 97-100, 102-108, 109, 110, 112, 113, 114-124).

Plaintiff brings claims against Defendants for violation of the P&A Acts under the P&A Acts themselves and under 42 U.S.C. § 1983. (*Id.* ¶ 163-167). Plaintiff also requests injunctive and declaratory relief. (*Id.* ¶¶ 168-172). Specifically, Plaintiff requests a declaratory judgment that "Defendants' policies, procedures, regulations, and practices continue to deny DRT full, complete, meaningful, and timely access to requested records of these youths violated and continues to violate the P&A Acts" and preliminary and permanent injunctions "enjoining Defendants from continuing to deny full, complete, meaningful, and timely access by Plaintiff DRT to these records." (*Id.* ¶¶ 170-171).

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint for failure to state a claim upon which relief can be granted. For purposes of a motion to dismiss, a court must accept as true all of the factual allegations in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual allegations to state a claim for relief that is plausible on its face. *Id.* at 678. A claim has facial plausibility when the plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* In reviewing a motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff, accepts its allegations as true, and draws all reasonable inferences in favor of the plaintiff. *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Thus, dismissal is appropriate only if "it appears beyond doubt that the plaintiff can prove

no set of facts in support of his claim which would entitle him to relief." *Guzman v. U.S. Dep't of Children's Servs.*, 679 F.3d 425, 429 (6th Cir. 2012).

Further "a motion to dismiss under Rule 12(b)(6) is generally not the appropriate vehicle to dismiss a claim based on an affirmative defense" because "as with all affirmative defenses, it is the burden of the defendant to prove the elements of the defense." *Mixon v. Trott L., P.C.*, No. 19-1366, 2019 WL 4943761, at *2 (6th Cir. 2019). A plaintiff typically does not have to anticipate or negate an affirmative defense to survive a motion to dismiss. *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012). However, an affirmative defense can be the basis for dismissal under Rule 12(b)(6) if "the plaintiff's own allegations show that a defense exists that legally defeats the claim for relief." *Est. of Barney v. PNC Bank, Nat. Ass'n*, 714 F.3d 920, 926 (6th Cir. 2013) (citation omitted).

### III. ANALYSIS

#### A. Spending Clause

Defendants provide a lengthy and well-articulated argument that the P&A Acts that serve as the basis for Plaintiff's claims were enacted under the Spending Clause of the United States Constitution (Art. I, § 8, cl. 1) and because Defendants do not accept federal funding, they are not subject to the P&A Acts. Plaintiff provides an equally detailed and well-structured argument to defeat that basis for dismissal.

While interesting and perhaps dispositive at some future juncture, this argument does not get out of the starting block under a Rule 12(b)(6) analysis, which is limited to the allegations in the Second Amended Complaint and draws all reasonable inferences in Plaintiff's favor.

Specifically, Defendants state (without support) that they "are not recipients of federal funds" and appear to base this argument on what is not in the Second Amended Complaint – an

4

allegation that Defendants receive federal funds. Defendants provide the Court with no authority that a plaintiff should anticipate an argument that a defendant may raise and plead facts to address that argument to avoid dismissal. Defendants are arguing from the absence of such an allegation, not what is in the Second Amended Complaint, which alleges that Defendants are subject to the P&A Acts. Accepting these allegations as true, which the Court must at this juncture, Defendants' Spending Clause argument does not support dismissal.

B. The Materials Are Not "Records"

Defendants next argue that certain materials requested by Plaintiff are not "records" under the three federal statutes. The PAIMI Act defines "records" to include "reports prepared by any staff of a facility rendering care and treatment or reports prepared by an agency charged with investigating reports of incidents of abuse, neglect, and injury occurring at such facility that describe incidents of abuse, neglect, and injury occurring at such facility and the steps taken to investigate such incidents, and discharge planning records." 42 U.S.C. § 10806(b)(3)(A). The DD Act defines records to include "(1) a report prepared or received by any staff at any location at which services, supports, or other assistance is provided to individuals with developmental disabilities; (2) a report prepared by an agency or staff person charged with investigating reports of incidents of abuse or neglect, injury, or death occurring at such location, that describes such incidents and the steps taken to investigate such incidents; and (3) a discharge planning record." 42 U.S.C. § 15043(c).

Courts have construed the scope of "records" broadly. In *Disability Rts. Texas v. Bishop*, the Northern District of Texas recognized that limiting the scope of "records" such that "a P&A organization would be able to access records documenting abuse of its client only when the abuse occurred incident to the care, treatment, or investigation into the abuse of the client" would

"categorically exclude from a P&A organization's investigatory powers records related to the abuse of P&A clients in contexts other than care, treatment, or investigation." 615 F. Supp. 3d 454, 465–66 (N.D. Tex. 2022). The Court also recognized that "Congress sought to empower P&A organizations to 'investigate incidents of abuse and neglect of individuals with mental illness' generally and not only those incidents that are in a therapeutic or investigatory context" and that "given that abuse or neglect of individuals with mental illness can occur in many different settings, it is incredible that Congress would categorically exclude a broad range of non-therapeutic and non-investigatory conduct that constitutes abuse or neglect from a P&A organization's records-access authority." *Id.* This result is consistent with *Disability Rts. Texas v. Hollis*, 103 F.4th 1058, 1063–64 (5th Cir. 2024), in which the Fifth Circuit addressed *Bishop* and held that:

> "[T]he ordinary public meaning of 'records,' as well as statutory structure and context, confirm that the term includes videos of a P&A client's alleged abuse or neglect." *Id.* at 461. The *Bishop* court also made note of "existing statutory protections [which] adequately protect the privacy rights of other detainees [or patients]." *Id.* There, it noted that:
>
>> [T]he phrase, "of ... any individual," need not be read so narrowly—as Bishop suggests—to imply that a record must be exclusively produced for or regarding a particular individual. The "preposition 'of' may be used to show connection or association, as well as ownership ... and it seems clear that the term is used in the former sense here." *Pa. Prot. & Advoc., Inc. v. Houstoun*, 228 F.3d 423, 427 (3d Cir. 2000) (Alito, J.) (citing Random House Dictionary of the English Language 999 (1967)) (construing "records" in Section 10805(a)(4) to include peer-review reports belonging to a hospital rather than an individual patient). *Id.* at 465.
>
> In this case, the district court also maintained that, notwithstanding other individuals' privacy rights which may be implicated, the purpose of the P&A Acts necessitates DRTx's access to video record evidence. Allowing Houston Behavioral to block DRTx from reviewing video records would significantly hinder the P&A organization from fulfilling its federal mandate. The district court noted that the stated statutory purpose of P&A organizations' investigative powers is to "investigate incidents of abuse and neglect of individuals with mental illness" and "to ensure the rights of individuals with mental illness are protected." 42 U.S.C. § 10801(b). We agree and hold that the statutory plain language and purpose grants

6

DRTx access to "all records of ... any individual," including the video footage requested here. *Id.*

*Disability Rts. Texas v. Hollis*, 103 F.4th 1058, 1063–64 (5th Cir. 2024).

Similarly, the Southern District of Ohio granted a P&A system's motion for preliminary injunction and ordered a facility to provide records including "the requests for grievances and complaints made by the youth, restraint logs and denial of privileges logs of the youth, information regarding the staff involved in the incidents, and video recordings of the hour before and after the reported incidents." *Disability Rts. Ohio v. Buckeye Ranch, Inc.*, 375 F. Supp. 3d 873, 886 (S.D. Ohio 2019).

Defendants' "records" argument asks the Court to assume that video footage, incident reports, behavior reduction sheets, "point sheets" and "R+I records" are not "investigative records." While a record developed through discovery may ultimately support that argument, the Court cannot reach such a conclusion at this stage, so Defendants' request for dismissal on this basis fails.

## C. Claims Related to Identified Youth

Defendants next argue that Plaintiff failed to plead that the youth at issue have a "developmental disability" or "mental illness."

Reviewing the allegations in the Second Amended Complaint – many of which are included in a chart provided by Defendants (Doc. No. 56 at 22-24), all the youth are alleged to have a condition covered by the PAIMI and DD Acts except "M.W." and "M.C."

Plaintiff's response does not point to any allegations concerning whether M.W. or M.C. are "individuals" covered by the acts at issue. Indeed, Plaintiff's own argument that the "records" must be "of an individual with" a developmental disability or mental illness supports Defendants' argument, so any claims relating to M.W. and M.C. will be dismissed.

7

**D. Residence At the Time**

Defendants next argue that Plaintiff's records requests under the PAIMI Act for youth M.C., K.S., and A.B. must be dismissed because they did not reside in the facility at the time of the requests. (Doc. No. 56 at 25). Plaintiff responds that its access authority is not limited to youths who reside at a facility at the time of the records requests. (Doc. No. 60 at 23). In support of its argument, Plaintiff relies on the language of 42 U.S.C. §10805(a)(1)(A), which states that a P&A system is authorized to "investigate incidents of abuse and neglect of individuals with mental illness if the incidents are reported to the system or if there is probable cause to believe that the incidents occurred." Moreover, Plaintiff notes that 42 U.S.C. § 10805(a)(4)(B) authorizes access to records of "any individual (including an individual who has died or whose whereabouts are unknown) -- (i) who by reason of the mental or physical condition of such individual is unable to authorize the system to have such access; (ii) who does not have a legal guardian, conservator, or other legal representative, or for whom the legal guardian is the State; and (iii) with respect to whom a complaint has been received by the system or with respect to whom as a result of monitoring or other activities (either of which result from a complaint or other evidence) there is probable cause to believe that such individual has been subject to abuse or neglect."

Plaintiff contends that "[i]f someone is dead or their whereabouts are unknown, it is highly unlikely that they are currently residing at the facility at the time of the records request." (Doc. No. 60 at 23). Plaintiff also contends that Defendants' proposed interpretation "would mean that a facility could evade abuse and neglect investigations simply by transferring the individual to another facility." (*Id.*). The Court agrees and finds that dismissal based on Defendants' argument is not warranted.

8

**E. Section 1983**

Defendants also seek dismissal of Plaintiff's Section 1983 claim on the grounds that the three federal statutes that serve as the basis for Defendants' non-Section 1983 claims expressly provide Plaintiff with a private right and remedy, such that Plaintiff cannot also seek remedies under Section 1983.

The parties appear to agree that the two-part test set forth in *Health and Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166 (2023) should be applied to determine if a federal statute is enforceable under Section 1983.

Defendants concede the first point – the statutory provisions unambiguously confer individual federal rights – but argue that Congress precluded Section 1983 enforcement of the rights created by the three statutes at issue by including in those acts a comprehensive enforcement scheme.

Supreme Court precedent directs this Court to first look at the express language of the statutes at issue to determine whether Congress included a comprehensive redress and, if it includes such a means of redress, Section 1983 is not a proper means of enforcing those rights. *City of Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S. 113, 121 (2005).

Plaintiff relies on *Michigan Prot. & Advoc. Serv., Inc. v. Evans*, 2010 WL 3906259 (E.D. Mich. Sept. 30, 2010) for the proposition that fees can be awarded to a P&A system because such fees were awarded in that case. However, the *Evans* opinion made no reference to Section 1983, nor did it include analysis of the viability of a Section 1983 claim brought by a P&A system.

Plaintiff also argues that it should be able to bring Section 1983 claims because they are a "crucial tool for non-profit entities … [because Section 1983] permits an award of attorney's fees." This argument puts the cart before the horse and does not explain whether such a claim is viable

9

in the first place. In fact, Congress allowed for a P&A system to use amounts from judgments to further the purpose of the DD Act by that system but did not also allow for an award of attorney's fees. 42 U.S.C. § 15044(b)(2).

Neither party provides the Court with binding Sixth Circuit authority on this issue; however, the Seventh Circuit addressed the viability of a Section 1983 claim when a P&A system sought records under the PAIMI Act. *Indiana Prot. and Advoc. Servs. v. Indiana Fam. & Soc. Servs. Admin.*, 603 F.3d 365 (7th Cir. 2010). In *Indiana Prot. and Advoc. Servs.*, a state P&A system brought suit against a state hospital, state officials, and the Indiana Family and Social Services Administration under the PAIMI Act for failing to provide requested patient records for two individuals. *Id.* at 369-370. The P&A system received information from a hospital staff member about a patient that led it to open an investigation regarding the patient's care while at the hospital. The P&A system requested the patient's "complete chart" and a copy of reports prepared by a Mortality Review Committee, and the hospital denied the requests. *Id.* at 368-369.

The P&A system also received a complaint from another patient at the same hospital who had filed a grievance with the hospital alleging that hospital employees, among others, "had battered, assaulted, and attempted to murder him." *Id.* at 369. The P&A system requested a copy of the hospital's investigation into the patient's grievance and the "incident report." *Id.* The hospital provided a summary of its "investigation results" but failed to provide any underlying records or the "incident report." *Id.*

In its analysis, the Court considered whether the PAIMI Act authorized P&A systems to bring an action for injunctive and declaratory relief seeking access to patient records. The Court recognized that "[l]ooking to the PAIMI Act, we find that Congress expressed its intent to create a legally enforceable right of access to patient records vested in an identifiable class—protection
10

and advocacy systems, including IPAS, which act for the benefit and protection of mentally ill individuals who may have difficulty acting for themselves. If and when those protection and advocacy systems are denied their right of access, the PAIMI Act shows with sufficient clarity that the remedy is a suit to enforce the right of access in federal or state court." *Id.* at 375. The Court also recognized that "[t]he Act further provides that the system shall have the power to bring legal actions to ensure the protection of its constituents and to litigate on behalf of its constituents" and that "[a] suit for access to patient records falls squarely within the statutory authority to pursue 'legal and other appropriate remedies to ensure the protection of individuals with mental illness....'". *Id.*

Moreover, in *Health and Hosp. Corp. of Marion Cnty. v. Talevski*, the Supreme Court addressed when a federal statute is enforceable through Section 1983. 599 U.S. 166 (2023). The Court recognized that "[a]lthough federal statutes have the potential to create § 1983-enforceable rights, they do not do so as a matter of course" and held that "[s]tatutory provisions must *unambiguously* confer individual federal rights." *Id.* at 180 (internal citation omitted) (emphasis in original). In order to find that Congress has "unambiguously conferred" individual rights, "it must be determined that 'Congress intended to create a federal right' *for* the identified class, not merely that the plaintiffs fall 'within the general zone of interest that the statute is intended to protect.'" *Id.* at *183 (internal citation omitted) (emphasis in original). Moreover, the Court held that "this test is satisfied where the provision in question is 'phrased in terms of the persons benefited' and contains 'rights-creating,' individual-centric language with an 'unmistakable focus on the benefited class'" and that "[c]onversely, we have rejected § 1983 enforceability where the statutory provision 'contain[ed] no rights-creating language'; had 'an aggregate, not individual, focus'; and 'serve[d] primarily to direct the Federal Government's

11

distribution of public funds.'" *Id.* at *183-184 (internal citations omitted). The Supreme Court also held that "[e]ven if a statutory provision unambiguously secures rights, a defendant 'may defeat t[he] presumption by demonstrating that Congress did not intend' that § 1983 be available to enforce those rights." *Id.* at *186. The Supreme Court has made clear that "[t]he provision of an express, private means of redress in the statute itself is ordinarily an indication that Congress did not intend to leave open a more expansive remedy under § 1983" and that " in *all* of the cases in which we have held that § 1983 *is* available for violation of a federal statute, we have emphasized that the statute at issue… *did not* provide a private judicial remedy (or, in most of the cases, even a private administrative remedy) for the rights violated." *City of Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S. 113, 121 (2005) (emphasis in original) (internal citation omitted).

As correctly pointed out by Defendants, here the language of the DD and PAIMI Acts expressly provide for private judicial enforcement. Specifically, the DD Act states that "[n]othing in this subchapter shall preclude a system from bringing a suit on behalf of individuals with developmental disabilities against a State, or an agency or instrumentality of a State." 42 U.S.C. § 15044(b). Similarly, the PAIMI Act provides that "[p]rior to instituting any legal action in a Federal or State court on behalf of a individual with mental illness, an eligible system, or a State agency or nonprofit organization which entered into a contract with an eligible system under section 10804(a) of this title, shall exhaust in a timely manner all administrative remedies where appropriate. If, in pursuing administrative remedies, the system, agency, or organization determines that any matter with respect to such individual will not be resolved within a reasonable time, the system, agency, or organization may pursue alternative remedies, including the initiation of a legal action." 42 U.S.C. § 10807(a). Moreover, the DD and PAIMI Acts do not include fee-shifting provisions. Instead, P&A systems are permitted to use federal funds to pay attorneys' fees

12

in records-access litigation. *See* 45 C.F.R. § 1326.24 ("Allotments may be used to pay the otherwise allowable costs incurred by a [P&A system] in bringing lawsuits in its own right to . . . obtain access to records . . . .").

Notably, while it appears the Sixth Circuit has not directly addressed this issue, several other courts have upheld claims for enforcement of the P&A Acts through Section 1983. *Advoc. Ctr. v. Stalder*, 128 F. Supp. 2d 358, 365–66 (M.D. La. 1999) ("The PAMII Act is in itself void of any express statement by Congress which forecloses § 1983 action. Neither does the PAMII Act contain any comprehensive remedial scheme by which this court could imply an intent to foreclose § 1983 action."); *Disability Rts. New York v. N. Colonie Bd. of Educ.*, No. 114CV0744DNHDJS, 2017 WL 1901958, at *3 (N.D.N.Y. May 8, 2017) (holding that "[n]umerous courts, including those in the Second Circuit, have considered a protection and advocacy system's claim to enforce its authority under the P&A Statutes through a Section 1983 action" and that "none of the P&A Statutes contain an express statement or comprehensive remedial scheme foreclosing the ability to bring a Section 1983 action."); *Advoc. Ctr. v. Stalder,* 128 F. Supp. 2d 358, 365–66 (M.D. La. 1999) ("[a]s stated above, the right to access records in this case is both a constitutional and statutory right of the Advocacy Center. The Advocacy Center may, in its own right, sue when an agency fails to comply with a request. In this case, the denial of access occurred while the defendants were acting under the color of the state law. Therefore this court concludes that the Advocacy Center is not precluded from bringing a § 1983 action against the defendants."); *Prot. & Advoc. For Persons With Disabilities v. Armstrong*, 266 F. Supp. 2d 303, 312 (D. Conn. 2003) ("[i]t is not unheard of for a P & A to pursue declaratory or injunctive relief through § 1983. In fact, several courts that have considered a P & A's claim to enforce its authority under PAMII have done so through § 1983…Armstrong argues that Connecticut P&A does not have standing to bring

13

a § 1983 action, since it doesn't make sense for a State agency to sue another member of the State. None of the courts which have considered a P & A's claim under § 1983 have questioned its standing to bring such a claim. Indeed, this seems logical, since while the P & A is a State agency, it has a representative function, and thus is entrusted with protecting the civil rights of individuals with mental illness.").

Plaintiff also relies on the case *Michigan Prot. & Advoc. Serv., Inc. v. Flint Cmty. Sch.*, 146 F. Supp. 3d 897 (E.D. Mich. 2015). In *Michigan Prot. & Advoc. Serv.,* a P&A system brought suit under the P&A Acts via Section 1983 against the defendant for failure to provide records of mentally ill, physically disabled, and developmentally disabled students as requested by the plaintiff. The plaintiff filed a motion for preliminary injunction to compel the defendant to provide the requested records. The Court held that "the PAIMI Act imposes a limited obligation on a protection and advocacy system to make some efforts to pursue administrative remedies before filing suit" but that "[e]xhaustion of state administrative remedies is not required as a prerequisite to bringing an action pursuant to § 1983." *Id.* at 905 (internal citation omitted). The Court ultimately granted Plaintiff's motion for a preliminary injunction and held that defendants were required to furnish the records requested by plaintiff and to comply with future records requests.

The Sixth Circuit has recognized that "[t]he burden ... lies with the defendant in a § 1983 action to prove preclusion." *Bullington v. Bedford Cnty., Tennessee*, 905 F.3d 467, 473 (6th Cir. 2018) (internal citation omitted). Here, Defendants contend that "the *only* purpose DRT could have for including a § 1983 claim is to seek attorneys' fees under 42 U.S.C. § 1988." (Doc. No. 56 at 29). The Court finds that Defendants' argument will be better presented with the benefit of discovery and that a ruling at this juncture is premature. Accordingly, the Court denies dismissal

of Plaintiff's Section 1983 claim at this stage and will address Defendants' argument, if necessary, at a future juncture when the record is more fully developed.

## IV. CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss (Doc. No. 55) is **GRANTED** in part and **DENIED** in part.

An appropriate Order will enter.

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE